UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DOMINIQUE P. WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:23-CV-057-RHH |
| | ) | |
| MARTIN O'MALLEY,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff Dominique P. Williams' appeal regarding the denial of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* (the "Act"). The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (ECF No. 11.) The Court has reviewed the parties' briefs and the entire administrative record, including the transcript and medical evidence.  Based on the following, the Court will affirm the Commissioner's denial of Williams' application.

**I.     Background**

The Court adopts the statement of facts set forth in Williams' statement of facts (ECF No. 21-1) and Defendant's response and statement of additional facts (ECF Nos. 22-1, 22-2), as they

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley shall be substituted for Kilolo Kijakazi as the defendant in this suit. *See* 42 U.S.C. § 405(g).

are not contested by Williams. Together, these statements provide a fair description of the record before the Court. Specific facts will be discussed as needed to address the parties' arguments.

On or about June 5, 2020, Williams applied for DIB and SSI, alleging that she has been unable to work due to disability since January 1, 2018.[2] (Tr. 19, 245-260.) Williams alleged disability due to flat foot; chronic back pain; anxiety; depression; bipolar; PTSD; and right elbow fracture. (Tr. 140.) Her application was initially denied and denied on reconsideration, and she filed a request for a Hearing by Administrative Law Judge (ALJ). (Tr. 137-138, 176-177, 210-214.) On December 22, 2021, the ALJ held a hearing on Williams' claim. (Tr. 77-102.) Williams was represented by counsel at the hearing, and an impartial vocational expert testified. *Id.*

In a decision issued on March 2, 2022, the ALJ found Williams was not disabled as defined in the Act from the alleged onset date through the date of decision. (Tr. 30.) On March 11, 2022, Williams filed a Request for Review of Hearing Decision with the Social Security Administration's (SSA) Appeals Council. (Tr. 242-244.) On November 17, 2022, the Appeals Council denied Williams' request for review, and adopted the ALJ's decision in full. (Tr. 1-6.)

## II.     Standard for Determining Disability Under the Act

The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which

---

[2] On February 7, 2022, Williams notified the ALJ via post-hearing letter that she wished to amend her onset date to April 26, 2020, the date she suffered right arm injuries. Williams acknowledged that in amending the onset date she was foregoing her right to pursue Title II DIB and would only be eligible for SSI benefits. (Tr. 318.)

2

exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Social Security Administration ("SSA") uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled. 20 C.F.R. § 404.1520(a)(1). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities and meets the durational requirements of the Act. 20 C.F.R. § 404.1520(a)(4)(ii). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix of the applicable regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairments do not meet or equal a listed impairment, the SSA determines the claimant's residual functional capacity ("RFC") to perform past relevant work. 20 C.F.R. § 404.1520(e).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant meets this burden, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner to establish the claimant maintains the RFC to perform a significant number of jobs in the national economy. *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000). If the claimant satisfied all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled. 20 C.F.R. § 404.1520(a)(4)(v).

### III.   The ALJ's Decision

Applying the foregoing five-step analysis, the ALJ here found that Williams met the insured status requirements of the Social Security Act through September 30, 2019. The ALJ also found that Williams had not engaged in substantial gainful activity since January 1, 2018, the

alleged onset date. (Tr. 17.) Next, the ALJ found that Williams has the following severe impairments: anxiety disorder, mood disorder, PTSD, opiate use disorder, and cocaine use disorder. (Tr. 18.) As of the protective filing date of June 5, 2020, Williams also developed the additional severe impairment of status post ORIF of right elbow fracture with ligament reconstruction. (Tr. 18.) The ALJ found that Williams' low back pain, abdominal pain, dysuria, acute cystitis, right thumb laceration, UTI and related symptoms, flat feet, and sight obesity were not severe.

The ALJ determined that Williams did not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1. The ALJ also determined that from the alleged onset date of January 1, 2018, to the date last insured of September 30, 2019, the claimant has the residual functional capacity to perform a full range of work at all exertional levels with nonexertional limitations. Specifically, the ALJ found that claimant could perform a full range of work except

> she is able to learn, remember, and carry out simple, routine tasks; is able to use reason and judgment to make simple, routine work-related decisions; is able to work at an appropriate and consistent pace while performing simple, routine tasks; is able to complete simple, routine tasks in a timely manner; is able to ignore or avoid distractions while performing simple, routine tasks; must have only gradual changes in job settings and duties; is able to sustain an ordinary routine and regular attendance at work while performing simple, routine tasks; and is able to work a full day without needing more than the allotted number or length of rest periods during the day while performing simple, routine tasks; can have no contact with the general public; and is able to occasionally work close to or with coworkers and supervisors without interrupting or distracting them while performing simple, routine tasks.

(Tr. 20.) The ALJ found that from the protective filing date of June 5, 2020, to the present, Williams has the residual functional capacity to perform light work except

> she can never climb ropes, ladders, or scaffolds; occasionally climb ramps and stairs; occasionally balance; occasionally stoop, kneel, crouch, or crawl; frequently reach, handle, finger, and feel with the right upper extremity; no concentrated

4

> exposure to extreme cold, unprotected heights, and hazardous machinery; is able to learn, remember, and carry out simple routine tasks; is able to use reason and judgment to make simple, routine work-related decisions; is able to work at an appropriate and consistent pace while performing simple, routine tasks; is able to complete simple, routine tasks in a timely manner; is able to ignore or avoid distractions while performing simple, routine tasks; must have only gradual changes in job setting and duties; is able to sustain an ordinary routine and regular attendance at work while performing simple, routine tasks; and is able to work a full day without needing more than the allotted number or length of rest periods during the day while performing simple, routine tasks; can have no contact with the general public; and is able to occasionally work close to or with coworkers and supervisors without interrupting or distracting them while performing simple, routine tasks.

(Tr. 21.) The ALJ found that Williams was unable to perform any past relevant work. (Tr. 25.) Williams was 29 years old and considered a younger individual age 18-49 on the alleged disability onset date. She has at least a high school education. The ALJ determined that the transferability of job skills is not material to the determination of disability because she did not have past relevant work. (Tr. 25.) Based on the foregoing, the ALJ found that there are jobs that exist in significant numbers in the national economy that Williams can perform, including Housekeeping Cleaner (Dictionary of Occupational Titles (DOT) No. 323.687-014, light exertion level, SVP 2, approximately 300,000 jobs in the national economy), Mailroom Clerk (DOT No. 209.687-026, light, SVP 2, approximately 30,000 jobs in the national economy), and Cafeteria Attendant (DOT No. 311.677-010, light, SVP 2, approximately 50,000 jobs in the national economy). (Tr. 25.) Therefore, the ALJ concluded that Williams was not disabled, as defined in the Act, from January 1, 2018, through March 2, 2022. (Tr. 26.)

## IV.   Standard for Judicial Review

The standard of review is narrow. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). This Court must affirm the Commissioner's decision if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole.  *See* 42 U.S.C.

§§ 405(g); 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942. *See also Biestek*, 139 S. Ct. at 1154 ("Substantial evidence . . . means—and means only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consolidated Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the Court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the Court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

**V.    Discussion**

Williams raises a single issue in her challenge of the ALJ's determination of the RFC. Specifically, Williams contends the ALJ erred in her finding related to use of the right upper

extremity: the ALJ found Williams can *frequently* reach, handle, finger, and feel with the right upper extremity, but Williams submits that substantial evidence supports that she can only *occasionally* reach, handle, finger, and feel with the right upper extremity. Williams argues this issue requires remand.

Defendant responds that the ALJ properly evaluated the evidence in a manner consistent with the SSA's regulations and policies, included all supported limitations in the RFC, and substantial evidence supports the ALJ's determination. Defendant specifically relies on *Winn v. Comm'r, Soc. Sec. Admin.*, 894 F.3d 982, 987 (8th Cir. 2018), wherein the Eighth Circuit rejected the claimant's similar argument and agreed with the district court that "[n]othing compels the conclusion that the limitation to frequent handling, fingering and feeling (which is less than constant) is not sufficient to encompass [the consultative examiner's] opinion."

As described above, this Court's role is to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. § 405(g); *Richardson*, 402 U.S. at 401; *Pate-Fire*, 564 F.3d at 942; *Estes*, 275 F.3d at 724. So long as there is substantial evidence in the record that supports the decision, this Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).

The Court has reviewed the entire transcript and the parties' briefs.  Based on a careful review of the record, and for the reasons stated in the ALJ's well-reasoned opinion and in Defendant's brief, the Court finds Ferguson's arguments on appeal to be without merit and further finds that the record as a whole reflects substantial evidence to support the ALJ's decision. *See Sledge v. Astrue*, 364 Fed. App'x 307 (8th Cir. 2010) (district court summarily affirmed the ALJ).

7

The Court acknowledges that the record contains conflicting evidence, and the ALJ could have reached a different conclusion. However, this Court's task is not to reweigh the evidence presented to the ALJ. The ALJ's weighing of the evidence here fell within the available "zone of choice," and the Court cannot disturb that decision merely because it might have reached a different conclusion. *See Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011).

**VI.**     **Conclusion**

Having reviewed the entire record, the Court finds that the ALJ made a proper RFC determination based on a fully and fairly developed record. Consequently, the Court determines that the ALJ's decision is supported by substantial evidence.

Accordingly,

**IT IS HEREBY ORDERED** that the relief requested in Plaintiff's Complaint and Brief in Support of Complaint is **DENIED**. (ECF Nos. 1, 21.)

**IT IS FURTHER ORDERED** that the decision of the Commissioner is **AFFIRMED**.

Dated this 4th day of January, 2024.

                                           RODNEY H. HOLMES
                                           UNITED STATES MAGISTRATE JUDGE